966 P.2d 53

STATE of Idaho, Plaintiff–Respondent,

v.

Randy ROGERSON, Defendant–Appellant.

No. 23626.

Court of Appeals of Idaho.

Aug. 25, 1998.

Review Denied Nov. 3, 1998.

Greg S. Silvey, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for respondent. Michael A. Henderson argued.

LANSING, Chief Judge.

In this appeal Randy Rogerson challenges his convictions and sentences for trafficking in methamphetamine and marijuana. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On April 10, 1996, law enforcement officials executed a search warrant at the home of Randy Rogerson. The warrant authorized police to search the residence, an unattached garage, and several outbuildings. Hidden in stash cans in the garage and outbuildings, police discovered more than 400 grams of methamphetamine and more than a pound of marijuana. Scales and other drug parapher-nalia were also discovered on the property. Based on the evidence discovered in the search, Rogerson was charged with trafficking in methamphetamine and marijuana, and he was convicted of both charges following a court trial. For the methamphetamine conviction, Rogerson was sentenced to a ten-year fixed period of confinement to be followed by a five-year indeterminate term and fined $25,000. On the marijuana conviction, he was sentenced to a unified six-year term in prison with three years fixed and given a $5,000 fine. The district court ordered the two prison terms to be served concurrently. On appeal, Rogerson maintains: (1) that the drug trafficking statute, I.C. § 37–2732B, is unconstitutional; (2) that there was insufficient evidence presented at trial to support his conviction; and (3) that his sentences are excessive.

## A. The Constitutionality of Idaho's Drug Trafficking Statute

Rogerson has raised three separate arguments challenging the constitutionality of Idaho's drug trafficking statute, I.C. § 37–2732B. We will address each of them in turn.

### 1. Idaho Code § 37–2732B does not violate separation of powers principles

Rogerson was sentenced pursuant to I.C. § 37–2732B, which specifies mandatory minimum sentences for trafficking in various controlled substances. Subsection (a)(7) of that statute specifies that these mandatory minimum terms of imprisonment "shall not be suspended, deferred, or withheld" by a sentencing court. Rogerson argues that these provisions of Idaho Code § 37–2732B violate Art. V, § 13 of the Idaho Constitution by impermissibly abrogating the inherent authority of the courts to suspend sentences.

This same argument was very recently rejected by the Idaho Supreme Court in *State v. Pena–Reyes,* 131 Idaho 656, 962 P.2d 1040 (1998), with the Court giving the following explanation:

> The Idaho Supreme Court, in *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971), held the judiciary had the inherent right to

suspend sentences. In 1978, in response to *McCoy*, the legislature proposed and the people adopted an amendment to Article 5, Section 13, of the Idaho Constitution, which added the following language: "provided, however, that the legislature can provide mandatory minimum sentences for any crimes, and any sentence imposed shall be not less than the mandatory minimum sentence so provided. Any mandatory minimum sentence so imposed shall not be reduced." Idaho Const. art. V, § 13. This amendment effectively circumscribes the power of our courts to suspend a mandatory minimum sentence contained in a statute enacted pursuant to the authority of our constitution. Thus, we find that I.C. § 37–2732B(a)(7) does not violate Article 5, Section 13, of the Idaho Constitution.

*Id.* at 657, 962 P.2d at 1041. Accordingly, we hold that Rogerson's assertion that § 37–2732B(a)(7) violates separation of powers principles is without merit.

### 2. Idaho Code § 37–2732B does not deny due process of law

■ Next, Rogerson argues that I.C. § 37–2732B denies procedural due process because, under the terms of the statute, the State is not required to prove that a defendant had an intent to deliver a controlled substance in order for the defendant to be found guilty of trafficking in a controlled substance. This argument also is without merit.

The Idaho legislature elected not to include an element of delivery or intent to deliver in the definition of the crime it called "trafficking" in a controlled substance. As the Idaho Supreme Court stated in *Matthews v. State*, 122 Idaho 801, 805, 839 P.2d 1215, 1219 (1992), "the definition of the elements of a criminal offense is entrusted to the legislature." *See also Malloroy v. State*, 91 Idaho 914, 435 P.2d 254 (1967) (stating that "it is uniformly held that the power to define crime and fix punishment . . . rests with the legislature, and that the legislature has great latitude in the exercise of that power."). Thus, it is for the legislature, not the defendant, to decide what the elements of a crime should be. Rogerson's argument that the trafficking statute should include an additional element does not demonstrate a due process violation.

### 3. Idaho Code § 37–2732B does not violate the equal protection clause

■ Rogerson also contends that Idaho Code § 37–2732B violates the Equal Protection Clause of the Fourteenth Amendment because it imposes harsher sentences than does I.C. § 37–2732, which also prescribes penalties for controlled substance offenses. According to Rogerson, these. two statutes "prohibit identical conduct but provide for significantly different penalties which allows persons guilty of identical conduct to be treated with great disparity."

■ Analysis of a claimed equal protection violation requires that the court first identify the classification which is being challenged and then determine the standard under which the classification will be judicially reviewed. *Tarbox v. Tax Comm'n*, 107 Idaho 957, 695 P.2d 342 (1984). In this case, the alleged classification is persons convicted of trafficking in a controlled substance under I.C. § 37–2732B, as distinguished from persons convicted of possession, possession with intent to deliver, delivery or manufacture of a controlled substance under I.C. § 37–2732.

■ Rogerson has presented no argument regarding the next step of the analysis, the identification of the standard under which the classification will be reviewed. There are, however, three potential standards of judicial review, and the choice of applicable standard depends upon the nature of the classification that is being challenged. The most rigorous standard is the strict scrutiny test, which requires that the State prove that it has a compelling interest which justifies the classification and that the discrimination is necessary to promote that interest. *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974); *State v. Reed*, 107 Idaho 162, 168, 686 P.2d 842, 848 (Ct.App.1984). This test applies only to 'suspect classifications,' such as those based upon race, and to classifications burdening 'fundamental interests'. . . ." *Reed, supra.* The second test is the intermediate scrutiny test, sometimes referred to as the "means-focus" test. *Idaho*

*Sch. For Equal Educ. v. Evans,* 123 Idaho 573, 582, 850 P.2d 724, 733 (1993). The intermediate scrutiny test has developed for use in equal protection cases which are inadequately analyzed through the use of the strict scrutiny test or the less rigorous rational basis test. *Id.* It is generally applied when the State action in question creates obviously and invidiously discriminatory classifications. *Jones v. State Bd. of Med.,* 97 Idaho 859, 867, 555 P.2d 399, 407 (1976). The least stringent test is the rational basis test. Under that standard "a classification will be upheld if it is rationally related to a legitimate government objective." *Reed,* 107 Idaho at 168, 686 P.2d at 848.

In this case, the classification at issue, persons who have been convicted of trafficking in cocaine, is obviously not a suspect classification such as those based on race, nor is it an obviously and invidiously discriminatory classification. Further, Rogerson has identified no fundamental right infringed by the classification. Therefore, we will not apply the strict scrutiny nor the intermediate scrutiny test. The third test, which is applicable here, requires only that the classification be rationally related to a legitimate government objective.[1]

Applying this standard, we note that the premise of Rogerson's argument—that I.C. §§ 37–2732 and 37–2732B provide disparate punishment for the same act—is inaccurate. The elements of the offenses defined by these statutes are not the same. One can be convicted under § 37–2732B only if the State proves that the quantities of controlled substances specified in the statute were involved in the offense. These quantity threshold elements are not found in § 37–2732, and persons can be convicted under that statute for possession, manufacture, or delivery of much smaller quantities. Indeed, for some offenses under § 37–2732, the amount of controlled substance need not be even a usable quantity. *See State v. Collinsworth,* 96 Idaho 910, 914, 539 P.2d 263, 267 (1975); *State v. Troughton,* 126 Idaho 406, 411, 884 P.2d 419,

424 (Ct.App.1994). Under the statutory scheme, potential prison sentences and the accompanying fines vary widely depending upon the amount of drugs, the type of drugs, and the circumstances surrounding the defendant's control or disposition of the drugs.

The legislature may rationally and legitimately determine that possession, manufacture, or delivery of larger quantities of controlled substances creates greater harm and a greater threat to society, and therefore warrants a sentence of greater deterrent and punishment value, than does similar activity with a lesser quantity of drugs. As we observed in *State v. Ybarra,* 122 Idaho 11, 15, 830 P.2d 522, 526 (Ct.App.1992), "tremendous waste, hurt, and tragedy" exist in our society as a result of drug trafficking and drug abuse. The legislature's decision to increase the level of punishment for crimes involving larger amounts of controlled substances is rationally related to the State's legitimate interest in curbing large-scale possession, manufacturing, and distribution of controlled substances. Therefore, the statutes in question do not violate the Equal Protection Clause.

**B. Rogerson's Fines and Sentences Do Not Violate Constitutional Guarantees Against Cruel and Unusual Punishment**

■ In his next argument, Rogerson maintains that the sentences and fines imposed by the district court are so out of proportion to the gravity of the offense committed that they constitute cruel and unusual punishment under our state and federal constitutions.

■ To address this constitutional challenge, we must first make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. *State v. Brown,* 121 Idaho 385, 394, 825 P.2d 482, 491 (1992). This "grossly disproportionate" test is equivalent

---

1. This conclusion is in accord with the Idaho Supreme Court's decision in *State v. O'Bryan,* 96 Idaho 548, 531 P.2d 1193 (1975). The Court there said that in reviewing a defendant's equal protection challenge to drug statutes on the basis

of "disparity between respective sentences," a "restrained standard of review" would be applied which required only that the statutory classification be "reasonably related to the purpose of the statute." *Id.* at 553, 531 P.2d at 1198.

58

to the standard under the Idaho Constitution enunciated in *State v. Evans*, 73 Idaho 50, 245 P.2d 788 (1952), which focuses upon whether the punishment is "out of proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable [people]." *Brown*, 121 Idaho at 394, 825 P.2d at 491. If an inference of such disproportionality is found, we must conduct a proportionality analysis comparing Rogerson's sentence to those imposed on other defendants for similar offenses. *Id. See also State v. Matteson*, 123 Idaho 622, 626, 851 P.2d 336, 340 (1993). For purposes of this analysis, we treat the fixed portion of the sentences as the terms of confinement. *Id.*

In this case, our threshold comparison of the crimes and the sentences does not lead to an inference of gross disproportionality. Rogerson was found in possession of large quantities of marijuana and methamphetamine. The prosecuting attorney estimated that these drugs had a market value of $80,-000. The amount of damage that could be inflicted on human lives by the distribution and use of these drugs is incalculable. The offenses are sufficiently serious that we cannot say that the sentences are out of proportion to the gravity of the offenses or such as to shock the conscience of reasonable people. Consequently, we do not proceed with a further proportionality review. Rogerson has not demonstrated that his sentences, including the fines, constitute cruel and unusual punishment under either the federal or state constitution.

## C. Sufficient Evidence Existed To Justify Rogerson's Conviction

Finally, Rogerson contends that insufficient evidence was presented at trial to sustain the district court's verdict. He argues that the State failed to demonstrate that he was in constructive possession of the drugs discovered in the garage and other outbuildings and that the conviction must therefore fall.

A conviction will not be set aside where there is substantial, competent evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State*

*v. Bronnenberg*, 124 Idaho 67, 70, 856 P.2d 104, 107 (Ct.App.1993); *State v. Peite*, 122 Idaho 809, 823, 839 P.2d 1223 (Ct.App.1992); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On appeal, we construe all facts, and inferences to be drawn from those facts, in favor of upholding the decision of the trier of fact. *Peite, supra; State v. Aragon*, 107 Idaho 358, 366, 690 P.2d 293, 301 (1984). Where there is competent evidence to sustain the verdict, we will not reweigh the evidence or disturb the verdict. *Peite, supra; State v. Cotton*, 100 Idaho 573, 575, 602 P.2d 71, 73 (1979).

In *State v. Rozajewski*, 130 Idaho 644, 945 P.2d 1390 (Ct.App.1997), we explained what the State was required to demonstrate in order to prove that a defendant had constructive possession of a controlled substance:

In order to prove constructive possession, knowledge of the controlled substance and physical control of the controlled substance must be independently proven beyond a reasonable doubt, by either circumstantial or direct evidence. *State v. Seitter*, 127 Idaho 356, 360, 900 P.2d 1367, 1371 (1995). *See also State v. Greene*, 100 Idaho 464, 466, 600 P.2d 140, 142 (1979); *State v. Burnside*, 115 Idaho 882, 885, 771 P.2d 546, 549 (Ct.App.1989). Constructive possession of a controlled substance exists where a nexus between the accused and the substance is sufficiently proven so as to give rise to the reasonable inference that the accused was not simply a bystander but, rather, had the power and intent to exercise dominion and control over the substance. *State v. Garza*, 112 Idaho 778, 784, 735 P.2d 1089, 1095 (Ct.App.1987).

*Id.* at 647, 945 P.2d at 1393.

In this case there was ample evidence from which the district court could reasonably infer that Rogerson had both the power and the intent to exercise dominion and control over the illicit substances discovered on his property. There is no question that Rogerson had access to and control over the garage and outbuildings where the drugs were discovered, as he stated at trial that he had lived on the property for ten years. The numerous and varied locations of the drug stashes within the outbuildings suggested to

the district court that a resident could not have been unaware of their existence. Moreover, the discovery of scales, baggies, and other drug packaging materials stored in plain view on shelves in Rogerson's garage also indicate that he knew of the drugs' existence. Most importantly, Rogerson's assertions that he did not know that the drugs were hidden on his property are belied by his own taped admission that the methamphetamine found on the property was over three months old. This statement establishes that Rogerson was not only aware of the drugs on his property, but also that he had specific knowledge regarding when the drugs were hidden there.

## CONCLUSION

We conclude that Rogerson's constitutional challenges to I.C. § 37–2732B are without merit, that his sentences do not constitute cruel and unusual punishment, and that there is substantial evidence to support the trial court's finding that Rogerson is guilty of the offenses charged. Accordingly, the judgment of conviction and sentences are affirmed.

PERRY and SCHWARTZMAN, JJ., concur.